IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-58-BO

| | |
|---|---|
| DOMTAR AI INC. and its affiliate,<br>ASSOCIATED HYGENIC PRODUCTS<br>LLC,<br>    Plaintiffs,<br><br>v.<br><br>J.D. IRVING, LTD., IRVING PERSONAL<br>CARE, LTD., and JAMES DEFELICE,<br>    Defendants. | **ORDER** |

This cause comes before the Court on defendants' motion for judgment on the pleadings, or in the alternative, for summary judgment [DE 40], plaintiffs' motion for discovery [DE 45], and plaintiffs' motion to seal [DE 50]. For the reasons discussed below, the motion for judgment on the pleadings is GRANTED, the motion for discovery is DENIED AS MOOT and the motion to seal is DENIED.

## BACKGROUND

Plaintiffs filed this action in lieu of arbitration on January 31, 2014, seeking injunctive relief and alleging claims for breach of contract, unfair competition and unfair and deceptive trade practices, violation of the North Carolina Uniform Trade Secrets Protection Act ("UTSPA"), tortious interference with contractual relations, conspiracy, and conversion. The complaint alleges that defendant DeFelice was hired by plaintiff Associated Hygiene Products ("AHP") in December 2009 and thereafter executed an employment agreement that contains covenants not to compete and to protect against the disclosure of confidential information. AHP was acquired by plaintiff Domtar AI Inc. ("Domtar") in June 2013 and became a wholly-owned

subsidiary thereof; all agreements to which AHP was a party were assigned to and accepted by Domtar.

Defendant DeFelice notified plaintiffs that he intended to resign to accept employment with defendant J.D. Irving ("JDI"), who plaintiffs contend is a direct competitor in the baby diaper product segment. Plaintiffs thereafter filed this suit. JDI then moved to transfer this case to the Northern District of Georgia. On the same day, plaintiffs filed an amended complaint and a motion for preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Plaintiffs then requested an expedited hearing on their motion for preliminary injunction, and defendant JDI moved to stay this matter pending resolution of its own motion for injunctive relief filed in the Northern District of Georgia, or for an expedited hearing on its motion to transfer.[1] The Court denied the motion to transfer. [DE 25]. On April 25, 2014, the Court held a hearing on the motion for preliminary injunction and the motion to stay. The Court denied the motion for preliminary injunction and held the motion to stay in abeyance until motions practice in this Court concluded. [DE 38]. Defendants then filed the instant motion for judgment on the pleadings on May 23, 2014 and plaintiffs filed their motion for discovery on June 16, 2014.

The United States District Court for the Northern District of Georgia transferred to this Court DeFelice and Irving's declaratory judgment action seeking relief identical to De Felice's counterclaim in this action. The case (No. 5:14-CV-280-BO) is currently pending before this Court and defendants seek judgment in their favor on the claims in that case through their motion for judgment on the pleadings.[2]

---

[1] On March 25, 2014, defendant DeFelice and defendant Irving Personal Care notified the Court of their consent to and joining in J.D. Irving's motion to transfer and motion to stay. [DE 24].

[2] Because case no. 5:14-CV-280-BO has not been consolidated with this matter and because the complaint in that case seeks more and different forms of relief than the counter-complaint in this case, the Court declines to enter a ruling in that case based on a motion in this case. The parties may make the appropriate motions at the appropriate times in that matter.

2

## DISCUSSION

In the amended complaint, plaintiffs seek injunctive relief (count one) and allege that DeFelice breached the noncompetition provision in a form key employee employment agreement ("the Agreement") with AHP by resigning and relocating to Canada to work for Irving (count two); that defendants engaged in unfair competition and unfair and deceptive trade practices ("UDTPA") by Irving hiring DeFelice to work in Canada (count three); that DeFelice will inevitably disclose unspecified trade secrets to Irving in violation of the North Carolina Trade Secrets Protection Act ("TSPA") simply because he is working for Irving (count four); that Irving induced DeFelice to breach the Agreement by hiring him (count five); and that all defendants engaged in a conspiracy to harm plaintiffs (count six). Defendants seek a declaratory judgment that the restrictive covenants in the Agreement are governed by Georgia law and void and unenforceable under Georgia law.

I. MOTION FOR JUDGMENT ON THE PLEADINGS.

Federal rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law. *Smith v. McDonald*, 562 F. Supp. 829, 842 (M.D.N.C. 1983). A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).

When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Bell Atl.*

3

Case 5:14-cv-00058-BO   Document 55   Filed 08/20/14   Page 3 of 12

*Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000). A trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "In determining a motion for judgment on the pleadings, the court may consider documents incorporated by reference in the pleadings." *Farmer v. Wilson Hous. Auth.*, 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004) (quotation omitted).

        A.        Breach of Contract and Declaratory Judgment Claims.

The Court finds that the breach of contract claim is governed by Georgia law. North Carolina's conflicts of law standard is *lex loci* contractus. The law of the place where the contract was formed is presumed to govern unless an express or implied contrary intent rebuts that presumption. *Eli Research, Inc. v. United Communications Group, LLC*, 312 F. Supp. 2d 748, 754 (M.D.N.C. 2004); *Morton v. Morton*, 332 S.E.2d 736, 738 (N.C. App. 1985). Here, the Agreement was prepared by Georgia-based AHP, presented to DeFelice in Georgia, during his employment in Georgia, and was executed by both parties in Georgia.

Defendants argue that the Agreement contains a clause specifying that arbitration will take place in the city in which the company's branch office is located where the employee is or was last employed. Defendants hold this clause to mean that the express intent of the parties at the time of the Agreement's execution was for arbitration and injunctive relief to be pursued in

4

the State of North Carolina. Defendants cite to *ACS Partners, LLC v. Caputo*, 2010 U.S. Dist. LEXIS 19907 (M.D.N.C. Feb. 12, 2010), to support that argument. Defendants' reliance on *Caputo* is misplaced. In *Caputo* the parties entered into the agreement in Georgia with the intent that Mr. Caputo would relocate from Georgia to North Carolina for the purpose of performing his job. Here, when AHP and DeFelice entered into the Agreement AHP did not have a North Carolina office. Further, plaintiffs have not pled or submitted any facts suggesting that AHP or DeFelice intended DeFelice to work anywhere except Georgia when the Agreement was executed. Further, DeFelice continued to work in Georgia for several years after signing the agreement. It is clear to this Court that the Agreement was intended to be performed in Georgia. The generically worded arbitration clause in the Agreement does not reveal any intent, express or implied, for North Carolina law to govern here.

The arguments before the Court on this motion are essentially the same as were before the Court on the motion for preliminary injunction. However, the Court now makes the final determination that the restrictive covenants in the Agreement are unenforceable as a matter of law. The question of whether a restrictive covenant is reasonable and enforceable is a question of law for the Court.[3] *Hulcher Servs., Inc. v. R.J. Corman R.R. Co., LLC*, 543 S.E.2d 461, 465 (Ga. App. 2001).

Georgia law considers reasonableness as to time and territory when adjudging the permissibility of restrictive covenants. *Aga v. Rubin*, 533 S.E.2d 804, 805 (Ga. App. 2000). Here the territorial restriction of the noncompete covenant is drafted to extend to anywhere in the United States. The noncompete purports to restrict DeFelice from (i) working in the diaper industry (ii) anywhere within the United States (iii) in the same capacity as he was employed by

---

[3] The Agreement was entered into prior to the recent enactment of the Georgia Restrictive Covenants Act, O.C.G.A. § 13-8-50 *et seq.*, and the restrictive covenants are therefore governed by pre-existing Georgia common law. *Holton v. Phys. Oncology Servs., L.P.*, 742 S.E.2d 702 (2013).

5

AHP (iv) for JDI/IPC and other competitors. By arguing that DeFelice's work in Canada would have an impact on Domtar's business in the United States and is therefore prohibited by the noncompete, plaintiffs essentially argue that there is no territorial restriction on the contract. Indeed, in today's interconnected world, if DeFelice worked for JDI in Europe, or Mexico, or any country, his work might have some impact on Domtar's business in the United States. Domtar's interpretation of its own contract that would allow DeFelice to be in breach by working in Canada greatly expands the territorial scope of the contract to an impermissible degree under Georgia law. *See Fuller v. Kolb*, 234 S.E.2d 517 (Ga. 1977) (affirming dismissal of employer's suit to enforce restrictive covenant because the absence of territorial limitations renders covenant void). Therefore the noncompete restriction is unenforceable and void as a matter of law.

As plaintiffs have not alleged that DeFelice breached the nonsolicitation restriction in the Agreement, this Court need not determine whether or not that restriction is enforceable. Further, the restriction, on its face only applies to those employees which had the responsibility for soliciting business from or developing goodwill with certain customers. [DE 10-1 ¶4]. All parties agree that DeFelice did not have these responsibilities and therefore the nonsolicitation provision is inapplicable to DeFelice.

However, because the noncompete restrictive covenant in the Agreement exceeds what is necessary to safeguard any protectable interests plaintiffs might have, all of the restrictive covenants in the Agreement must be struck in their entirety. *See Adv. Tech. Consultants Inc. v. Roadtrac, LLC*, 551 S.E.2d 735, 737–38 (Ga. App. 2001) (holding that Georgia does not allow "blue-penciling" of agreements; therefore, if any restriction is unenforceable, all restrictions in the agreement are unenforceable)

Accordingly, count two of the complaint fails to state a claim for which relief may be granted and DeFelice is entitled to judgment on the pleadings on both this claim and his counterclaim for declaratory judgment.

B.  TSPA Claim.

Plaintiffs seek an order enjoining defendant DeFelice from disclosing, accessing, or utilizing any of plaintiffs' trade secret and proprietary and confidential information, including that he be "walled" from any responsibilities at JDI in which he is in position to disclose, access, or utilize any of plaintiffs' trade secret and proprietary and confidential information. Defendants counter that plaintiffs have brought their claim for misappropriation of trade secrets under the wrong law and that North Carolina's TSPA does not apply to misappropriation or threatened misappropriation that takes place or will take place outside of North Carolina.

North Carolina's choice of law rules call for the application of the *lex loci delicti* (or "law of the place of the wrong") test to determine which law should apply to claims for misappropriation of trade secrets. *McElmurry v. Alex Fergusson, Inc.*, 2006 U.S. Dist. LEXIS 10760, *31 (M.D.N.C. Mar. 8, 2006); *Merck & Co. Inc. v. Lyon*, 941 F. Supp. 1443, 1456 n.3 (M.D.N.C. 1996). Here, DeFelice has relocated and works for Irving in Canada, not North Carolina. Although North Carolina law is sparse on the point, other jurisdictions have held that the *lex loci delicti* is not the place where the information was learned, but where the tortious act of misappropriation and use of the trade secret occurred. *See Merck*, 941 F. Supp. at 1456 n.3 (holding North Carolina's law to apply because "[i]f there is misappropriation of plaintiffs' trade secret information, at least some of that misappropriation will occur in North Carolina"); *Salsbury Labs., Inc. v. Merieux Labs., Inc.*, 735 F. Supp. 1555, 1568 (M.D. Ga. 1989) *aff'd as modified*, 908 F.2d 706 (11th Cir. 1990) ("In a trade secret misappropriation case, the *lex loci*

7

*delicti* is not the place where the information was learned, but where the tortious act of misappropriation and use of the trade secret occurred."); *Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110, 1115 (7th Cir. 1990) (affirming summary judgment and directed verdict for company alleged to have misappropriated trade secrets; holding that the law of the place where the defendant committed the wrong or obtained the benefit of misappropriating trade secrets applies); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 115 (D. Mass. 2001) (dismissing a trade secrets misappropriation claim brought under Florida law where the defendant's improper use of the trade secrets took place in Massachusetts, not Florida).

This Court agrees that the *lex loci delicti* here is where the actual misappropriation and use of the trade secret occurs. Here, if it occurred or threatens to occur at all, it will be in Canada where DeFelice now works. Accordingly, plaintiffs cannot bring a claim under the North Carolina TSPA for a misappropriation that occurs in Canada and therefore defendants' motion for judgment on the pleadings is granted as to count four of the complaint.

    C.    UDTPA Claim.

It is unclear from the pleadings whether or not DeFelice's breach of the Agreement by accepting employment with Irving took place in North Carolina or Canada. However, even assuming that the breach took place in North Carolina and therefore it is proper to apply North Carolina's UDTPA, plaintiffs have failed to state a claim for which relief may be granted.

Under the UDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are . . . unlawful." N.C. Gen. Stat. § 75-1.1. Whether an act is unfair or deceptive is a question of law for the Court. *Bernard v. Cent. Carolina Truck Sales, Inc.*, 314 S.E.2d 582, 584 (N.C. App. 1984). When the crux of a dispute is contractual, an UDTPA claim is generally not recognized, and a showing of

"substantial aggravating circumstances" is required. *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (citation omitted).

Here, it is clear that the facts alleged in support of plaintiffs' UDTPA claim arises out of a contractual dispute. Further, the conduct alleged does not constitute "substantial aggravating circumstances. Accordingly, plaintiffs have failed to state a proper claim under North Carolina's UDTPA and defendants' motion for judgment on the pleadings is granted as to count three of the complaint.

### D. Tortious Interference with Contract Claim.

Plaintiffs argue that their tortious interference with contract claim survives the instant motion because it can be based on their claim that DeFelice breached the confidentiality agreement. However, a careful review of the complaint reveals that plaintiffs have not alleged that DeFelice actually breached the confidentiality agreement. The complaint is only concerned with the noncompete provisions of the Agreement and the misappropriation of trade secrets. The complaint is devoid of any allegation that DeFelice violated the confidentiality agreement. Plaintiffs cannot argue that defendants' motion should be denied on the grounds that ". . . defendants have violated . . . laws in ways that have not been alleged." *Associated Gen. Contrators of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Further, because the restrictive covenants in the Agreement are void and unenforceable, Irving cannot be held liable for interfering with their enforcement. *See Med. Staffing Network, Inc. v. Ridgway*, 670 S.E.2d 321, 328 (N.C. App. 2009) (no claim for tortious interference where restrictive covenants were so overbroad as to be unenforceable). Accordingly, defendants' motion for judgment on the pleadings is granted as to count five of the complaint.

9

E.    Conspiracy Claim.

Because the breach of the Agreement is alleged to have occurred in North Carolina, the conspiracy claim is appropriately governed by North Carolina law. In North Carolina there is not a separate civil action for conspiracy, a civil conspiracy is an action for "damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone." *Henderson v. LeBauer*, 399 S.E.2d 142, 145 (N.C. App. 1991) (citation omitted). Here, because all of the claims have been dismissed, it is clear that defendants did not commit any tort against plaintiffs and therefore their conspiracy claim fails to state a claim for relief, and judgment on the pleadings is warranted.

F.    Claim for Injunction.

Similarly, because all claims have been dismissed, the claim for injunction cannot survive. Accordingly it too is dismissed.

II.    MOTION FOR DISCOVERY.

Plaintiffs' motion for discovery is based on the Court's consideration of defendants' motion in the alternative for summary judgment. Because the Court did not reach the merits of any motion for summary judgment and did not rely on any materials outside of the pleadings, plaintiffs' motion for discovery is denied as moot.

III.    MOTION TO SEAL.

Local Rule 7(f)(1) discourages replies and allows them only when in response to matters initially raised in a response. There being no matters initially raised in defendants' memorandum in opposition to plaintiffs' motion to seal, the Court now considers that motion.

Plaintiffs seek to seal, or redact relevant portions, of the second declaration of James DeFelice on the grounds that the declaration reveals confidential information and trade secrets. Having considered the matter and the arguments, the Court denies the motion to seal.

The common law presumes the right of the public to inspect and copy all judicial records. *Va. Dep't of State Police v. The Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, n. 17 (1980) (noting that "historically both civil and criminal trials have been presumptively open"). "This presumption of access, however, can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). Ultimately, the decision whether to allow public access to judicial records is a matter of this Court's "supervisory" and discretionary power. *Id.* (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598-99 (1978)). However, the right of access may only be abrogated in "unusual circumstances." *Id.* (citing *Stone v. University of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)).

Although the exact formulation of all of the components in a diaper might be properly considered a trade secret, the identity of one of those components is not. "Product X" is a commercially available product marketed by its manufacturer for the express purpose that plaintiffs' use it for. Further, plaintiffs decline to state whether or not DeFelice accurately described "Product X" in his declaration. Rather they use vague statements such as "[t]he material that Plaintiffs want to have sealed includes statements from Defendant DeFelice that, *if true*, identify the SAP Plaintiffs use in their European products and what Defendant DeFelice *believes* Plaintiffs have referred to as 'PRODUCT X.'" [DE 51 at 6] (emphasis supplied). In essence, if DeFelice's statements accurately identify "Product X," *and* the identity of "Product X" constituted a trade secret, then the motion to seal might be properly granted. However, if DeFelice's statements *do not* identify

11

"Product X" regardless of whether or not its identity is a trade secret, the Court's order to seal would keep perfectly harmless information from the public eye. There are simply too many conditionals at play here to justify an order to seal. This is so especially in light of the fact that this same document has been publicly filed in district court in Georgia and no motion to seal the document has been made there. Finally, plaintiffs' delay in seeking a motion to seal firmly tips the balance in favor of the presumption to have court documents and records accessible to the public. Accordingly the motion to seal is denied.

IV. MOTION TO STAY.

As this matter has now been resolved, the motion to stay is now moot and is denied as such.

## CONCLUSION

For the reasons discussed above, defendants' motion for judgment on the pleadings is GRANTED. The Court DECLARES that the restrictive covenants in the agreement are governed by Georgia law and void and unenforceable under Georgia law. Plaintiffs' motion to seal is DENIED, and plaintiffs' motion for discovery is DENIED AS MOOT. Defendants' motion to stay [DE 16] is DENIED AS MOOT. Finally, as there is one pending, yet unripe motion for sanctions pending before the Court, the case will not be closed until that matter is resolved.

SO ORDERED, this _18_ day of August, 2014.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

12

Case 5:14-cv-00058-BO   Document 55   Filed 08/20/14   Page 12 of 12